**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.: 14-60182-CIV-ROSENBAUM/HUNT

BASIL HENRY, DAVIN BUSH,
CHARLES SULLIVAN, EMELINA
GONZALEZ, LATASHA WALLACE,
MICHAEL EDWARDS, LASHANDA
SHAW, MICHAEL FLORENT, TAVARAS
BRADLEY, PAMELA NELSON, CALVIN
COLLINS, ANTHEA GILBERT, STEPHEN
POWELL, RODNEY PEWITT,
ANTHONY COLLINS,
TREVA HUTCHINSON, ANGELA
WILLIAMS-FERTIL, CARL VINCENT,
SHEENA COLEMAN, SHAHEEN AKHTAR,
IFTIKHAR AKHTAR,
MARCEL DOUGLAS, KAY WRIGHT,
VICTOR MALA, GLENDA JACKSON,
DEWAYNE WILLIAMS, JACINTA HAYNES,
RAMONE DAVIS, ANGELA THOMAS,
NYEISHA RAINEY, TARWANNA SHAW and
ANTONIA MOLE on
behalf of themselves and all similarly situated,

     Plaintiffs,

vs.

YOUTH SERVICES INTERNATIONAL, INC.,
YOUTH SERVICES INTERNATIONAL HOLDING, INC.,
JFS DEVELOPMENT, LLC, and JAMES SLATTERY,

     Defendants.

_____/

## AMENDED COMPLAINT

    Plaintiffs, BASIL HENRY, DAVIN BUSH, CHARLES SULLIVAN, EMELINA

GONZALEZ, LATASHA WALLACE, MICHAEL EDWARDS, LASHANDA SHAW,

MICHAEL FLORENT, TAVARAS BRADLEY, PAMELA NELSON, CALVIN COLLINS,

ANTHEA GILBERT, STEPHEN POWELL, RODNEY PEWITT, ANTHONY COLLINS,

TREVA HUTCHINSON, ANGELA WILLIAMS-FERTIL, CARL VINCENT, SHEENA

1

COLEMAN, SHAHEEN AKHTAR, IFTIKHAR AKHTAR, VICTOR MALA, MARCEL DOUGLAS, KAY WRIGHT, VICTOR MALA, GLENDA JACKSON, DEWAYNE WILLIAMS, JACINTA HAYNES, RAMONE DAVIS, ANGELA THOMAS, NYEISHA RAINEY, TARWANNA SHAW, AND ANTONIA MOLE, by and through their undersigned counsel, file this Amended Complaint against Defendants, YOUTH SERVICES INTERNATIONAL, INC., YOUTH SERVICES INTERNATIONAL HOLDING, INC., JFS DEVELOPMENT, LLC, JAMES SLATTERY and all and any parents and subsidiaries with respect to the Florida facilities pertaining to the allegations of the Amended Complaint, and state as follows:

## INTRODUCTION

1. This is a proceeding against Defendants for monetary damages to redress  the deprivation of rights secured to Plaintiff, Henry, under the overtime provision of Section 7 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA").

## JURISDICTION

1. The jurisdiction of the Court over this controversy is based on 29 U.S.C.  §216(b) and 28 U.S.C. § 1331.

## VENUE

2. The venue of this Court over this controversy is based on the following:

   a. The unlawful employment practices alleged below occurred and/or were committed within Broward County and Palm Beach County, Florida. Accordingly, venue lies in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b);

   b. Defendant, Youth Services International, Inc. ("YSI"), was and continues to be a Florida corporation doing business within this judicial district;

    c.   Defendant Youth Services International Holding Inc. ("YSI Holding") has its principal place of business at 6000 Cattleridge Drive, Suite 200, Sarasota, Florida 34232.

    d.   Defendant, JFS Development, LLC, is the parent company of YSI and was and continues to operate out of Sarasota, Florida.

    e.   Defendant, James F. Slattery, resides in Sarasota, Florida, and is the agent and owner of Defendant, YSI, YSI Holding, and controls JFS Development, LLC..

## PARTIES

3.    At all times material hereto, Plaintiff, Basil Henry, was and continues to be a resident of Broward County, Florida.

4.    At all times material hereto, Plaintiff, Davin Bush, was and continues to be a resident of Miami-Dade County, Florida.

5.    At all times material hereto, Plaintiff, Charles Sullivan, was and continues to be a resident of Miami-Dade County, Florida.

6.    At all times material hereto, Plaintiff, Emelina Gonzalez, was and continues to be a resident of Miami-Dade County, Florida.

7.    At all times material hereto, Plaintiff, Latasha Wallace, was and continues to be a resident of Miami-Dade County, Florida.

8.    At all times material hereto, Plaintiff, Michael Edwards, was and continues to be a resident of Palm Beach County, Florida.

9.    At all times material hereto, Plaintiff, Lashanda Shaw, was and continues to be a resident of Miami-Dade County, Florida.

10.    At all times material hereto, Plaintiff, Michael Florent, was and continues to be a resident of Broward County, Florida.

11.     At all times material hereto, Plaintiff, Tavaras Bradley, was and continues to be a resident of Miami-Dade County, Florida.

12.     At all times material hereto, Plaintiff, Pamela Nelson, was and continues to be a resident of Miami-Dade County, Florida.

13.     At all times material hereto, Plaintiff, Calvin Collins, was and continues to be a resident of Miami-Dade County, Florida.

14.     At all times material hereto, Plaintiff, Anthea Gilbert, was and continues to be a resident of Miami-Dade County, Florida.

15.     At all times material hereto, Plaintiff, Stephen Powell, was and continues to be a resident of Broward County, Florida.

16.     At all times material hereto, Plaintiff, Rodney Pewitt, was and continues to be a resident of Miami-Dade County, Florida.

17.     At all times material hereto, Plaintiff, Anthony Collins, was and continues to be a resident of Broward County, Florida.

18.     At all times material hereto, Plaintiff, Treva Hutchinson, was and continues to be a resident of Miami-Dade County, Florida.

19.     At all times material hereto, Plaintiff, Angela Williams-Fertil, was and continues to be a resident of Miami-Dade County, Florida.

20.     At all times material hereto, Plaintiff, Carl Vincent, was and continues to be a resident of Miami-Dade County, Florida.

21.     At all times material hereto, Plaintiff, Sheena Coleman, was and continues to be a resident of Miami-Dade County, Florida.

22.     At all times material hereto, Plaintiff, Shaheen Akhtar, was and continues to be a resident of Miami-Dade County, Florida.

4

23.     At all times material hereto, Plaintiff, Iftikhar Akhtar, was and continues to be a resident of Miami-Dade County, Florida.

24.     At all times material hereto, Plaintiff, Victor Mala, was and continues to be a resident of Broward County, Florida.

25.     At all times material hereto, Plaintiff, Marcel Douglas, was and continues to be a resident of Broward County, Florida.

26.     At all times material hereto, Plaintiff, Kay Wright, was and continues to be a resident of Dade County, Florida.

27.     At all times material hereto, Plaintiff, Glenda Jackson, was and continues to be a resident of Miami-Dade County, Florida.

28.     At all times material hereto, Plaintiff, Dewayne Williams, was and continues to be a resident of Miami-Dade County, Florida.

29.     At all times material hereto, Plaintiff, Jacinta Haynes, was and continues to be a resident of Broward County, Florida.

30.     At all times material hereto, Plaintiff, Ramone Davis, was and continues to be a resident of Miami-Dade County, Florida.

31.     At all times material hereto, Plaintiff, Angela Thomas, was and continues to be a resident of Miami-Dade County, Florida.

32.     At all times material hereto, Plaintiff, Nyeisha Rainey, was and continues to be a resident of Miami-Dade County, Florida.

33.     At all times material hereto, Plaintiff, Tarwanna Shaw, was and continues to be a resident of Miami-Dade County, Florida.

34.     At all times material hereto, Plaintiff, Antonia Mole, was and continues to be a resident of Miami-Dade County, Florida.

35.     At all times material hereto, Plaintiffs were "employee[s]" within the meaning of the FLSA.

36.     At all times material hereto, the corporate Defendants were and continue to be engaged in business within the State of Florida.

37.     At all times material hereto, the corporate Defendants were "employer[s]" with the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

38.     At all times material hereto, the corporate Defendants, were and continue to be "enterprise[s]" within the meaning of the FLSA.

39.     At all times material hereto, the corporate Defendants each had annual gross revenues in excess of $500,000 per annum.

40.     At all times material hereto, Defendants regularly owned and operated a business engaged in commerce or in the production of goods for commerce as defined in §3(r) and §3(s) of the FLSA, 29 U.S.C. §203(r) and §203(s).

41.     Defendant, Youth Services International, Inc. is a corporation organized under the laws of the State of Florida with its principal place of business at 6000 Cattleridge Drive, Suite 200, Sarasota, Florida 34232.

42.     Defendant Youth Services International Holding Inc. has its principal place of business at 6000 Cattleridge Drive, Suite 200, Sarasota, Florida 34232.

43.     Defendant JFS Development, LLC has its principal place of business at 6000 Cattleridge Drive, Suite 200, Sarasota, Florida 34232, and is listed by YSI as their holding company.

44.     Defendant James Slattery resides in Sarasota, Florida, and is the President of Defendant YSI and controls JFS Development, LLC.

45.     YSI is in the business of operating juvenile residential, correctional, commitment and rehabilitative facilities in Florida and elsewhere.  YSI provides services in Florida through contracts with the Florida Department of Juvenile, Justice, a department and agency of the State of Florida.

46.     At all times material hereto, the work performed by the Plaintiffs was directly essential to the business performed by the Defendants.

47.     At all times material hereto, Plaintiffs were "engaged in commerce" within the meaning of the FLSA.

### STATEMENT OF FACTS

### General Allegations

48.     At all times material, Defendants were for profit corporations that provided comprehensive programs and services available to government agencies serving at-risk youth.

49.     Defendants are able to provide such services based on contracts with State Governments, including the State of Florida.

50.     James Slattery has represented to the State of Florida that he is responsible for YSI complying with all federal and state wage and hour laws.

51.     Due to the fixed amount YSI is paid based on contract, Defendant maintains a rigid cost structure, including a fixed or budgeted number of labor hours that is allowed for each facility to be worked.

52.     At all times relevant hereto, Plaintiffs were employed by Defendants as non-exempt hourly paid employees.

53.     At all times relevant hereto, Defendants operated each juvenile correctional facility 365 days per year / 24 hours per day.  The daily operations are sub-divided into three shifts: (a) 7:00 to 15:00; (b) 15:00 to 23:00; and (c) 23:00 to 07:00.  In mid-2012, daily

operations shifted one hour earlier, so daily operations are currently sub-divided into three shifts: (a) 06:00 - 14:00; (b) 14:00 to 22:00; and (c) 22:00 to 06:00.

54.     At the beginning of each shift, Plaintiffs, and all similarly situated employees, were required to go to a facility briefing to discuss the events of the prior shift and only after the debriefing, was the incoming shift allowed to relieve the employees who were working during the earlier shift.

55.     During this overlap which was at least 20 minutes, and often as much as 60 minutes, (depending on the employee and their post in the facility), the employees from the previous shift were required to stay at their post until they were relieved by the incoming employees.

56.     During this overlap, and while the prior shift employees stayed at their post, the time-clock automatically clocked out the employee at the scheduled end of the shift.

57.     The result was that defendants knowingly and maliciously failed to pay all non-exempt employee for any 'stay time' they incurred at the end of each shift; they were essentially working for free of the clock.

58.     "Stay time" violations occur three times a day, at the time when there is a shift change at the facility.

59.     Defendants are fully aware that all facility time clocks automatically clocks out employees at the scheduled end of their shift as they are the ones who had them programmed that way knowing full well that all employees are unable to leave any earlier than 20 minutes after the shift ended.

60.     Defendants did not have in place any corporate missed punch policy or form for the facilities to use.

61.     Those Facilities that did implement a missed punch form destroyed these documents on a monthly basis notwithstanding their obligation to preserve these records by Department of Labor Regulations.

62.     Defendants also required Plaintiffs and all similarly situated employees to stay for a biweekly 1.5 hour meeting after the end of their assigned shift. Employees were required to stay for this meeting while off the clock.

63.     Defendants also required some Plaintiffs and all similarly situated employees to work double shifts and would not pay them for the additional 8 hours worked.

64.     Defendants also required some Plaintiffs who worked in excess of 40 hours in the first week of a pay cycle, to have their excess hours rolled forward into the second week of a pay cycle to avoid paying overtime. When too many regular hours were worked during a pay cycle, Plaintiffs would be told they would receive their money on their next paycheck. Ultimately, Plaintiffs were not paid for these hours.

65.     Defendants willfully refused to pay Plaintiffs and all similarly situated employees for 20 to 60 minutes per day which results in them being shorted in pay from between 2.5 and 5.75 hours per week. Moreover, because of failure to credit and compensate Plaintiffs and all similarly situated employees for these extra hours, the Plaintiffs have also been denied overtime pay when their total hours worked exceeded 40 hours.

66.     Defendants regularly required select employees to work an additional 8 hours at the conclusion of their shift. These double shifts that employees were required to stay for were unpaid.

67.     Defendants willfully refused to pay Plaintiffs who worked double shifts for the extra shift worked. These double shifts would have also qualified for overtime and were not

included in the Plaintiffs' appropriate overtime calculations thereby depriving the Plaintiffs of their federally protected right to overtime compensation.

<u>**The Named Plaintiffs**</u>

68.     For Plaintiff, Basil Henry, damages begin on December 24, 2010, when he worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Basil Henry was paid at the regular rate of $10.38 per hour throughout the course of his employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 24, 2010, and continuing through the end of his employment on December 31, 2012, Plaintiff, routinely worked in excess of 0.75 hour after the scheduled completion of each shift. Additionally, Basil Henry, was required to stay for an average unpaid 8 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks.  During the 106 weeks within the statute of limitations he worked as a Youth Counselor/Youth Care Worker, Plaintiff Basil Henry worked 1325 overtime hours, of which he was paid for 362.37 hours. Therefore, for the remaining 962.63 overtime hours he worked, he did not receive overtime pay at the rate of time and one half his regular rate of pay $15.57.  Plaintiff, Basil Henry, is then entitled to approximately $14,988.15 for unpaid overtime wages.

69.     For Plaintiff, Emelina Gonzalez, damages begin on December 24, 2010 when she worked as a Youth Counselor/Youth Care Worker at the Broward Girls Academy facility. Emelina Gonzalez was paid $10.38 per hour throughout the course of her employment, and was told she would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 24, 2010 and continuing through the end of her employment on October 30, 2012, Plaintiff, routinely worked in excess of 0.75 hour after the scheduled completion of each shift. Additionally, Emelina Gonzalez was required to stay for an unpaid 5.5 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks.  During the 97 weeks within

the statute of limitations she worked as a Youth Counselor/Youth Care Worker, Plaintiff, Emelina Gonzalez, worked 970 overtime hours, of which she was paid for 739 hours.  For the remaining 231 overtime hours she worked, she did not receive overtime pay at the rate of time and one half her regular rate of pay $15.57.  Plaintiff, Emelina Gonzalez, is owed approximately $3,596.67 for unpaid overtime.

70.     For Plaintiff, Davin Bush, damages begin on December 24, 2010 when he worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Davin Bush was paid at the regular rate of $10.38 per hour throughout the course of his employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week. From December 24, 2010 and continuing through the end of his employment on November 18, 2012, Plaintiff, routinely worked in excess of 1 hour after the scheduled completion of each shift. Additionally, Davin Bush, was required to stay for an average unpaid 16 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks.  During the 47 weeks within the statute of limitations he worked as a Youth Counselor/Youth Care Worker, Plaintiff Davin Bush worked 1,022.25 overtime hours, of which he was paid for 225.27 hours.  Therefore, for the remaining 796.98 overtime hours he worked, he did not receive overtime pay at the rate of time and one half his regular rate of pay $15.57.  Plaintiff, Davin Bush, is then entitled to approximately $12,408.97 for unpaid overtime wages.

71.     For Plaintiff, Michael Edwards, damages begin on December 24, 2010 when he worked as a Youth Counselor/Youth Care Worker at the West Palm Beach facility.  Michael Edwards was paid at the regular rate of $11.54 per hour throughout the course of his employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 24, 2010 and continuing through the end of his employment on April 4, 2012, Plaintiff, routinely worked in excess of 0.75 hour after the

scheduled completion of each shift. Additionally, Michael Edwards, was required to stay for an average unpaid 3.5 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks.   During the 67 weeks within the statute of limitations he worked as a Youth Counselor/Youth Care Worker, Plaintiff Michael Edwards worked 536 overtime hours, of which he was paid for 435 hours.  Therefore, for the remaining 101 overtime hours he worked, he did not receive overtime pay at the rate of time and one half his regular rate of pay $17.31.  Plaintiff, Michael Edwards, is then entitled to approximately $1,748.31 for unpaid overtime wages.

72.     For Plaintiff, Lashanda Shaw, damages begin on December 24, 2010 when she worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Lashanda Shaw was paid at the regular rate of $10.38 per hour throughout the course of her employment, and was told she would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 24, 2010 and continuing through the end of her employment on September 24, 2012, Plaintiff, routinely worked in excess of 0.4 hour after the scheduled completion of each shift. Additionally, Lashanda Shaw, was required to stay for an unpaid 1.5 hour meeting every two weeks.  During the 89 weeks within the statute of limitations he worked as a Youth Counselor/Youth Care Worker, Plaintiff Lashanda Shaw worked 244.75 overtime hours, of which she was paid for 162.19 hours.  Therefore, for the remaining 82.55 overtime hours she worked, she did not receive overtime pay at the rate of time and one half her regular rate of pay $15.57.  Plaintiff, Lashanda Shaw, is then entitled to approximately $1,285.30 for unpaid overtime wages.

73.     For Plaintiff, Michael Florent, damages begin on December 24, 2010 when he worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Michael Florent was paid at the regular rate of $10.38 per hour throughout the course of his employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours

each week.  From December 24, 2010 and continuing through the end of his employment on February 28, 2013, Plaintiff, routinely worked in excess of 2.5 hour after the scheduled completion of each shift. Additionally, Michael Florent, was required to stay for an average unpaid 16 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks. During the 114 weeks within the statute of limitations he worked as a Youth Counselor/Youth Care Worker, Plaintiff Michael Florent worked 3,334.5 overtime hours, of which he was paid for 343.3 hours.  Therefore, for the remaining 2,991.19 overtime hours he worked, he did not receive overtime pay at the rate of time and one half his regular rate of pay $15.57.  Plaintiff, Michael Florent, is then entitled to approximately $46,572.98 for unpaid overtime wages.

74.    For Plaintiff, Tavaras Bradley, damages begin on December 24, 2010 when he worked as a Shift Supervisor at the Thompson Academy facility.  Tavaras Bradley was paid at the regular rate of $12.38 per hour throughout the course of his employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week. From December 24, 2010 and continuing through the end of his employment on December 28, 2012, Plaintiff, routinely worked in excess of 0.75 hour after the scheduled completion of each shift. Additionally, Tavaras Bradley, was required to stay for an average unpaid 8 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks.  During the 80 weeks within the statute of limitations he worked as a Shift Supervisor Plaintiff Tavaras Bradley worked 1000 overtime hours, of which he was paid for 86 hours.  Therefore, for the remaining 914 overtime hours he worked, he did not receive overtime pay at the rate of time and one half his regular rate of pay $18.57.  Plaintiff, Tavaras Bradley, is then entitled to approximately $16,972.98 for unpaid overtime wages.

75.    For Plaintiff, Pamela Nelson, damages begin on December 24, 2010 when she worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Pamela

Nelson was paid at the regular rate of $10.38 per hour throughout the course of her employment, and was told she would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 24, 2010 and continuing through the end of her employment on February 19, 2012, Plaintiff, routinely worked in excess of 1 hour after the scheduled completion of each shift. Additionally, Pamela Nelson, was required to stay for an unpaid 1.5 hour meeting every two weeks.  During the 106 weeks within the statute of limitations she worked as a Youth Counselor/Youth Care Worker, Plaintiff Pamela Nelson worked 609.5 overtime hours, of which she was paid for 24.6 hours.  Therefore, for the remaining 584.89 overtime hours she worked, she did not receive overtime pay at the rate of time and one half her regular rate of pay $15.57.  Plaintiff, Pamela Nelson, is then entitled to approximately $9,106.89 for unpaid overtime wages.

76.     For Plaintiff, Calvin Collins, damages begin on December 24, 2010 when he worked as a Youth Counselor/Youth Care Worker at the Broward Girls Academy facility. Calvin Collins was paid at the regular rate of $10.38 per hour throughout the course of his employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 24, 2010 and continuing through the end of his employment on December 17, 2012, Plaintiff, routinely worked in excess of 1 hour after the scheduled completion of each shift. Additionally, Calvin Collins, was required to stay for an average unpaid 4.5 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks.   During the 104 weeks within the statute of limitations he worked as a Youth Counselor/Youth Care Worker, Plaintiff Calvin Collins worked 1066 overtime hours, of which he was paid for 274 hours.  Therefore, for the remaining 792 overtime hours he worked, he did not receive overtime pay at the rate of time and one half his regular rate of pay $15.57.  Plaintiff, Calvin Collins, is then entitled to approximately $12,331.44 for unpaid overtime wages.

14

77.     For Plaintiff, Anthea Gilbert, damages begin on December 24, 2010 when she worked as a Shift Supervisor at the Thompson Academy facility.  Anthea Gilbert was paid at the regular rate of $12.26 per hour throughout the course of her employment, and was told she would receive overtime compensation for all hours worked in excess of 40 hours each week.   From December 24, 2010 and continuing through the end of her employment on December 28, 2012, Plaintiff, routinely worked in excess of 2.25 hour after the scheduled completion of each shift. Additionally, Anthea Gilbert, was required to stay for an unpaid 1.5 hour meeting every two weeks.  During the 105 weeks within the statute of limitations she worked as a Shift Supervisor, Plaintiff Anthea Gilbert worked 1,260 overtime hours, of which she was paid for 248.74 hours. Therefore, for the remaining 1,011.26 overtime hours she worked, she did not receive overtime pay at the rate of time and one half her regular rate of pay $18.39.  Plaintiff, Anthea Gilbert, is then entitled to approximately $18,597.07 for unpaid overtime wages.

78.     For Plaintiff, Stephen Powell, damages begin on December 24, 2010 when he worked as an Intramural Coordinator at the Thompson Academy facility.  Stephen Powell was paid at the regular rate of $10.11 per hour throughout the course of his employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week. From December 24, 2010 and continuing through the end of his employment on December 30, 2011, Plaintiff, routinely worked in excess of 2.25 hour after the scheduled completion of each shift. Additionally, Stephen Powell, was required to stay for an average unpaid 8 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks.  During the 53 weeks within the statute of limitations he worked as a Intramural Coordinator, Plaintiff Stephen Powell worked 1060 overtime hours, of which he was paid for hours.   Therefore, for the remaining 1060 overtime hours he worked, he did not receive overtime pay at the rate of time and one half his

regular rate of pay $15.16.   Plaintiff, Stephen Powell, is then entitled to approximately $16,074.90 for unpaid overtime wages.

79.     For Plaintiff, Rodney Pewitt, damages begin on December 24, 2010 when he worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Rodney Pewitt was paid at the regular rate of $10.38 per hour throughout the course of his employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 24, 2010 and continuing through the end of his employment on December 31, 2012, Plaintiff, routinely worked in excess of 1.5 hour after the scheduled completion of each shift. Additionally, Rodney Pewitt, was required to stay for an average unpaid 24 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks. During the 106 weeks within the statute of limitations he worked as a Youth Counselor/Youth Care Worker, Plaintiff Rodney Pewitt worked 3,418.5 overtime hours, of which he was paid for 382.77 hours.   Therefore, for the remaining 3,035.73 overtime hours he worked, he did not receive overtime pay at the rate of time and one half his regular rate of pay $15.57.  Plaintiff, Rodney Pewitt, is then entitled to approximately $47,266.31 for unpaid overtime wages.

80.     For Plaintiff, Anthony Collins, damages begin on December 24, 2010 when he worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Anthony Collins was paid at the regular rate of $10.38 per hour throughout the course of his employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 24, 2010 and continuing through the end of his employment on September 30, 2011, Plaintiff, routinely worked in excess of 1 hour after the scheduled completion of each shift. Additionally, Anthony Collins, was required to stay for an average unpaid 6 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks. During the 41 weeks within the statute of limitations he worked as a Youth Counselor/Youth

Care Worker, Plaintiff Anthony Collins worked 481.75 overtime hours, of which he was paid for 15 hours.  Therefore, for the remaining 466.75 overtime hours he worked, he did not receive overtime pay at the rate of time and one half his regular rate of pay $15.57.  Plaintiff, Anthony Collins, is then entitled to approximately $7,267.29 for unpaid overtime wages.

      81.    For Plaintiff, Treva Hutchinson, damages begin on December 24, 2010 when she worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Treva Hutchinson was paid at the regular rate of $12.38 per hour throughout the course of her employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 24, 2010 and continuing through the end of her employment on December 17, 2012, Plaintiff, routinely worked in excess of 1.5 hour after the scheduled completion of each shift. Additionally, Treva Hutchinson, was required to stay for an average unpaid 8 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks.  During the 104 weeks within the statute of limitations she worked as a Youth Counselor/Youth Care Worker, Plaintiff Treva Hutchinson worked 1,690 overtime hours, of which she was paid for 331.73 hours.  Therefore, for the remaining 1,358.27 overtime hours she worked, she did not receive overtime pay at the rate of time and one half her regular rate of pay $18.57.  Plaintiff, Treva Hutchinson, is then entitled to approximately $25,223.07 for unpaid overtime wages.

      82.    For Plaintiff, Angela Williams-Fertil, damages begin on December 24, 2010 when she worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Angela Williams-Fertil was paid at the regular rate of $10.38 per hour throughout the course of her employment, and was told she would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 24, 2010 and continuing through the end of her employment on December 18, 2012, Plaintiff, routinely worked in excess of 0.75 hour after the

scheduled completion of each shift. Additionally, Angela Williams-Fertil, was required to stay for an average unpaid 4 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks.   During the 104 weeks within the statute of limitations she worked as a Youth Counselor/Youth Care Worker, Plaintiff Angela Williams-Fertil worked 884 overtime hours, of which she was paid for 44.75 hours.   Therefore, for the remaining 839.25 overtime hours he worked, she did not receive overtime pay at the rate of time and one half her regular rate of pay $15.57.   Plaintiff, Angela Williams-Fertil, is then entitled to approximately $13,067.12 for unpaid overtime wages.

83.     For Plaintiff, Sheena Coleman, damages begin on December 24, 2010 when she worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Sheena Coleman was paid at the regular rate of $10.38 per hour throughout the course of her employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 24, 2010 and continuing through the end of her employment on December 2, 2011, Plaintiff, routinely worked in excess of 1 hour after the scheduled completion of each shift. Additionally, Sheena Coleman, was required to stay for an average unpaid 16 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks.   During the 50 weeks within the statute of limitations she worked as a Youth Counselor/Youth Care Worker, Plaintiff Sheena Coleman worked 1,087.5 overtime hours, of which she was paid for 41.89 hours.  Therefore, for the remaining 1,045.61 overtime hours she worked, she did not receive overtime pay at the rate of time and one half her regular rate of pay $15.57.   Plaintiff, Sheena Coleman, is then entitled to approximately $16,280.14 for unpaid overtime wages.

84.     For Plaintiff, Shaheen Akhtar, damages begin on December 24, 2010 when she worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Shaheen

Akhtar was paid at the regular rate of $10.50 per hour throughout the course of her employment, and was told she would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 24, 2010 and continuing through the end of her employment on December 30, 2012, Plaintiff, routinely worked in excess of 1 hour after the scheduled completion of each shift. Additionally, Shaheen Akhtar, was required to stay for an average unpaid 16 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks. During the 105 weeks within the statute of limitations she worked as a Youth Counselor/Youth Care Worker, Plaintiff Shaheen Akhtar worked 2,283.75 overtime hours, of which she was paid for 237.18 hours.  Therefore, for the remaining 2,046.57 overtime hours she worked, she did not receive overtime pay at the rate of time and one half her regular rate of pay $15.75.  Plaintiff, Shaheen Akhtar, is then entitled to approximately $32,233.47 for unpaid overtime wages.

85.     For Plaintiff, Iftikhar Akhtar, damages begin on December 24, 2010 when he worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Iftikhar Akhtar was paid at the regular rate of $10.50 per hour throughout the course of his employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 24, 2010 and continuing through the end of his employment on December 30, 2012, Plaintiff, routinely worked in excess of 1 hour after the scheduled completion of each shift. Additionally, Iftikhar Akhtar, was required to stay for an average unpaid 8 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks. During the 105 weeks within the statute of limitations he worked as a Youth Counselor/Youth Care Worker, Plaintiff Iftikhar Akhtar worked 1,443.75 overtime hours, of which he was paid for 60 hours.  Therefore, for the remaining 1,383.75 overtime hours he worked, he did not receive overtime pay at the rate of time and one half his regular rate of pay $15.75.  Plaintiff, Iftikhar Akhtar, is then entitled to approximately $21,794.06 for unpaid overtime wages.

86.     For Plaintiff, Marcel Douglas, damages begin on December 24, 2010 when he worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Marcel Douglas was paid at the regular rate of $10.38 per hour throughout the course of his employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 24, 2010 and continuing through the end of his employment on March 5, 2012, Plaintiff, routinely worked in excess of 1 hour after the scheduled completion of each shift. Additionally, Marcel Douglas, was required to stay for an unpaid 1.5 hour meeting every two weeks.  During the 62 weeks within the statute of limitations he worked as a Youth Counselor/Youth Care Worker, Plaintiff Marcel Douglas worked 948.75 overtime hours, of which he was paid for 128 hours.   Therefore, for the remaining 820.75 overtime hours he worked, he did not receive overtime pay at the rate of time and one half his regular rate of pay $15.57.   Plaintiff, Marcel Douglas, is then entitled to approximately $12,779.07 for unpaid overtime wages.

87.     For Plaintiff, Kay Wright, damages begin on December 24, 2010 when she worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Kay Wright was paid at the regular rate of $12.38 per hour throughout the course of her employment, and was told she would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 24, 2010 and continuing through the end of her employment on December 15, 2012, Plaintiff, routinely worked in excess of 2 hour after the scheduled completion of each shift. Additionally, Kay Wright, was required to stay for an average unpaid 8 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks.  During the 103 weeks within the statute of limitations she worked as a Youth Counselor/Youth Care Worker, Plaintiff Kay Wright worked 1,987.59 overtime hours, of which she was paid for 224.59 hours. Therefore, for the remaining 1,763 overtime hours she worked, she did not receive overtime pay

at the rate of time and one half her regular rate of pay $18.57.  Plaintiff, Kay Wright, is then entitled to approximately $37,256.06 for unpaid overtime wages.

88.     For Plaintiff, Victor Mala, damages begin on December 24, 2010 when he worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Victor Mala was paid at the regular rate of $10.38 per hour throughout the course of his employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week. From December 24, 2010 and continuing through the end of his employment on November 18, 2012, Plaintiff, routinely worked in excess of 0.75 hour after the scheduled completion of each shift. Additionally, Victor Mala, was required to stay for an average unpaid 16 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks.  During the 99 weeks within the statute of limitations he worked as a Youth Counselor/Youth Care Worker, Plaintiff Victor Mala worked 2,029.5 overtime hours, of which he was paid for 416.35 hours.  Therefore, for the remaining 1,613.15 overtime hours he worked, he did not receive overtime pay at the rate of time and one half his regular rate of pay $15.57.   Plaintiff, Victor Mala, is then entitled to approximately $25,116.74 for unpaid overtime wages.

89.     For Plaintiff, Carl Vincent, damages begin on August 15, 2011 when he worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Carl Vincent was paid at the regular rate of $10.38 per hour throughout the course of his employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week. From August 15, 2011 and continuing through the end of his employment on May 14, 2012, Plaintiff, routinely worked in excess of 1 hour after the scheduled completion of each shift. Additionally, Carl Vincent, was required to stay for an average unpaid 16 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks.  During the 39 weeks within the statute of limitations he worked as a Youth Counselor/Youth Care Worker, Plaintiff Carl Vincent

21

worked 848.25 overtime hours, of which he was paid for 107.73 hours. Therefore, for the remaining 740.51 overtime hours he worked, he did not receive overtime pay at the rate of time and one half his regular rate of pay $15.57. Plaintiff, Carl Vincent, is then entitled to approximately $11,529.89 for unpaid overtime wages.

90.     For Plaintiff, Charles Sullivan, damages begin on February 4, 2012 when he worked as a Youth Counselor/Youth Care Worker at the Broward Girls Academy facility. Charles Sullivan was paid at the regular rate of $10.38 per hour throughout the course of his employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week. From February 4, 2012 and continuing through the end of his employment on November 31, 2012, Plaintiff, routinely worked in excess of 0.75 hour after the scheduled completion of each shift. Additionally, Charles Sullivan, was required to stay for an average unpaid 3 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks. During the 48 weeks within the statute of limitations he worked as a Youth Counselor/Youth Care Worker, Plaintiff Charles Sullivan worked 360 overtime hours, of which he was paid for 195.34 hours. Therefore, for the remaining 164.66 overtime hours he worked, he did not receive overtime pay at the rate of time and one half his regular rate of pay $15.57. Plaintiff, Charles Sullivan, is then entitled to approximately $2,563.75 for unpaid overtime wages.

91.     For Plaintiff, Latasha Wallace, damages begin on April 2, 2012 when she worked as a Youth Counselor/Youth Care Worker at the Broward Girls Academy facility. Latasha Wallace was paid at the regular rate of $10.38 per hour throughout the course of her employment, and was told she would receive overtime compensation for all hours worked in excess of 40 hours each week. From April 2, 2012 and continuing through the end of her employment on August 13, 2012, Plaintiff, routinely worked in excess of 0.25 hour after the

scheduled completion of each shift. Additionally, Latasha Wallace, was required to stay for an average unpaid 8.09 hour double shift once a week and an unpaid 1.5 hour meeting every two weeks.   During the 19 weeks within the statute of limitations she worked as a Youth Counselor/Youth Care Worker, Plaintiff Latasha Wallace worked 191.9 overtime hours, of which she was paid for 87.82 hours.  Therefore, for the remaining 104.07 overtime hours she worked, she did not receive overtime pay at the rate of time and one half her regular rate of pay $15.57.   Plaintiff, Latasha Wallace, is then entitled to approximately $1,620.00 for unpaid overtime wages.

92.     For Plaintiff, Victor Mala, damages begin on December 24, 2010 when he worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Victor Mala was paid at the regular rate of $10.38 per hour throughout the course of his employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week. From December 24, 2010 and continuing through the end of his employment on November 18, 2012, Plaintiff, routinely worked in excess of 0.75 hour after the scheduled completion of each shift. Additionally, Victor Mala, was required weekly to stay for two unpaid double shifts (16 hours) and required to stay for an unpaid 1.5 hour meeting every two weeks.  During the 99 weeks within the statute of limitations he worked as a Youth Counselor/Youth Care Worker, Plaintiff, Victor Mala worked 2029.5 overtime hours, of which he was paid for 416 hours. Therefore, for the remaining 1613 overtime hours he worked, he did not receive overtime pay at the rate of time and one half his regular rate of pay $15.57.   Plaintiff, Victor Mala, is then entitled to approximately $25,116.00 for unpaid overtime wages.

93.     For Plaintiff, Glenda Jackson, damages begin on February 10, 2011 when she worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Glenda Jackson was paid at the regular rate of $10.38 per hour throughout the course of her employment,

and was told she would receive overtime compensation for all hours worked in excess of 40 hours each week.  From February 10, 2011 and continuing through the end of her employment on December 18, 2012, Plaintiff, routinely worked in excess of 1 hour after the scheduled completion of each shift. Additionally, Glenda Jackson, was required weekly to stay for two unpaid double shifts (16 hours) and an unpaid 1.5 hour meeting every two weeks.  During the 96 weeks within the statute of limitations she worked as a Youth Counselor/Youth Care Worker, Plaintiff, Glenda Jackson worked 2088 overtime hours, of which she was paid for 247 hours. Therefore, for the remaining 1841 overtime hours she worked, she did not receive overtime pay at the rate of time and one half her regular rate of pay 15.57.  Plaintiff, Glenda Jackson, is then entitled to approximately $28,664.00 for unpaid overtime wages.

94.     For Plaintiff, Dewayne Williams, damages begin on February 10, 2011 when he worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Dewayne Williams was paid at the regular rate of 10.38 per hour throughout the course of his employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week.  From February 10, 2011 and continuing through the end of his employment on July 1, 2011, Plaintiff, routinely worked in excess of 1 hour after the scheduled completion of each shift. Additionally, Dewayne Williams, was required weekly to stay for two unpaid double shifts (16 hours) and for an unpaid 1.5 hour meeting every two weeks.  During the 20 weeks within the statute of limitations he worked as a Youth Counselor/Youth Care Worker, Plaintiff, Dewayne Williams worked 435 overtime hours, of which he was paid for 0 hours.  Therefore, for the remaining 435 overtime hours he worked, he did not receive overtime pay at the rate of time and one half his regular rate of pay $15.57.   Plaintiff, Dewayne Williams, is then entitled to approximately $6,773.00 for unpaid overtime wages.

95.     For Plaintiff, Jacinta Haynes, damages begin on December 5, 2011 when she worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Jacinta Haynes was paid at the regular rate of $10.38 per hour throughout the course of her employment, and was told she would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 5, 2011 and continuing through the end of her employment on November 18, 2012, Plaintiff, routinely worked in excess of 1.5 hour after the scheduled completion of each shift. Additionally, Jacinta Haynes, was required to stay for an unpaid 1.5 hour meeting every two weeks.  During the 50 weeks within the statute of limitations she worked as a Youth Counselor/Youth Care Worker, Plaintiff, Jacinta Haynes worked 412.5 overtime hours, of which she was paid for 0 hours.  Therefore, for the remaining 412.5 overtime hours she worked, she did not receive overtime pay at the rate of time and one half his regular rate of pay $15.57.   Plaintiff, Jacinta Haynes, is then entitled to approximately $6,423.00 for unpaid overtime wages.

96.     For Plaintiff, Ramone Davis, damages begin on December 24, 2010 when he worked as a Case Manager at the Thompson Academy facility.  Ramone Davis was paid at the regular rate of $13.50 per hour throughout the course of his employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 24, 2010 and continuing through the end of his employment on July 27, 2012, Plaintiff, routinely worked in excess of 1.5 hour after the scheduled completion of each shift. Additionally, Ramone Davis, was required to stay for an unpaid 1.5 hour meeting every two weeks.  During the 83 weeks within the statute of limitations he worked as a Case Manager, Plaintiff, Ramone Davis worked 684.75 overtime hours, of which he was paid for 0 hours. Therefore, for the remaining 684.75 overtime hours he worked, he did not receive overtime pay

at the rate of time and one half his regular rate of pay $20.25.  Plaintiff, Ramone Davis, is then entitled to approximately $13,866.00 for unpaid overtime wages.

97.     For Plaintiff, Angela Thomas, damages begin on December 24, 2010 when she worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility.  Angela Thomas was paid at the regular rate of $10.38 per hour throughout the course of her employment, and was told she would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 24, 2010 and continuing through the end of her employment on December 17, 2012, Plaintiff, routinely worked in excess of 0.75 hour after the scheduled completion of each shift. Additionally, Angela Thomas, was required to stay for an unpaid 1.5 hour meeting every two weeks.   During the 103 weeks within the statute of limitations she worked as a Youth Counselor/Youth Care Worker, Plaintiff, Angela Thomas worked 463.5 overtime hours, of which she was paid for 302 hours.  Therefore, for the remaining 161.5 overtime hours she worked, she did not receive overtime pay at the rate of time and one half her regular rate of pay $15.57.  Plaintiff, Angela Thomas, is then entitled to approximately $2,514.00 for unpaid overtime wages.

98.     Plaintiff, Nyeisha Rainey, worked at the Thompson Academy facility from December 24, 2010 until August 1, 2013 as a Youth Counselor/Youth Care Worker.  Nyeisha Rainey was paid at the regular rate of $10.38 per hour throughout the course of her employment, and was told she would receive overtime compensation for all hours worked in excess of 40 hours each week.  From December 24, 2010 and continuing through the end of her employment on August 1, 2013 at Thompson Academy, Plaintiff, routinely worked in excess of 2 hour after the scheduled completion of each shift. Additionally, Nyeisha Rainey, was required to stay for an unpaid 1.5 hour meeting every two weeks.  During the 89 weeks within the statute of limitations she worked as a Youth Counselor/Youth Care Worker at Thompson Academy, Plaintiff, Nyeisha

Rainey TA worked 956.75 overtime hours, of which she was paid for 429 hours.  Therefore, for the remaining 527.75 overtime hours she worked, she did not receive overtime pay at the rate of time and one half her regular rate of pay $15.57.  Plaintiff, Nyeisha Rainey TA, is then entitled to approximately $8,217.00 for unpaid overtime wages.

99.     In addition to working at Thompson Academy, Plaintiff, Nyeisha Rainey, also worked at the Broward Girls Academy facility as a Youth Counselor/Youth Care Worker beginning August 2, 2013.  During her employment at Broward Girls' Academy, Nyeisha Rainey was paid at the regular rate of $10.38 per hour, and was told she would receive overtime compensation for all hours worked in excess of 40 hours each week.  From August 2, 2013 and continuing through the end of her employment on March 22, 2014, Plaintiff, routinely worked in excess of 1 hour after the scheduled completion of each shift. Additionally, Nyeisha Rainey, was required to stay for an unpaid 1.5 hour meeting every two weeks.  During the 33 weeks within the statute of limitations she worked as a Youth Counselor/Youth Care Worker at Broward Girls Academy, Plaintiff, Nyeisha Rainey worked 189.75 overtime hours, of which she was paid for 0 hours.  Therefore, for the remaining  overtime hours she worked, she did not receive overtime pay at the rate of time and one half her regular rate of pay $15.57.  Plaintiff, Nyeisha Rainey, is then entitled to approximately $5,908.00 for unpaid overtime wages.

100.    Plaintiff Tarwanna Shaw, worked as a Youth Counselor/Youth Care Worker at the Thompson Academy facility from June 24, 2012 to January 30, 2013.  During that time, Tarwanna Shaw was paid at the regular rate of $10.38 per hour, and was told she would receive overtime compensation for all hours worked in excess of 40 hours each week.  From June 24, 2012 and continuing through the end of her employment on January 30, 2013, Plaintiff routinely worked in excess of 1 hour after the scheduled completion of each shift. Additionally, Tarwanna Shaw, was required to stay for an unpaid 1.5 hour meeting every two weeks.  During the 34

weeks within the statute of limitations she worked as a Youth Counselor/Youth Care Worker at Thompson Acaddemy, Plaintiff, Tarwanna Shaw worked 195.5 overtime hours, of which she was paid for 50 hours. Therefore, for the remaining 145.5 overtime hours she worked, she did not receive overtime pay at the rate of time and one half her regular rate of pay $15.57. Plaintiff, Tarwanna Shaw, is then entitled to approximately $2,265.00 for unpaid overtime wages.

101.    In addition to working at Thompson Academy, Tarwanna Shaw, also worked as a Shift Supervisor at the Broward Girls Academy facility from February 1, 2013 to February 28, 2014. Tarwanna Shaw was paid at the regular rate of $12.26 per hour throughout the course of her employment, and was told she would receive overtime compensation for all hours worked in excess of 40 hours each week. From February 1, 2013 and continuing through the end of her employment on February 28, 2014, Plaintiff routinely worked in excess of 0.75 hour after the scheduled completion of each shift. Additionally, Tarwanna Shaw, was required to stay for an unpaid 1.5 hour meeting every two weeks. During the 54 weeks within the statute of limitations she worked as a Shift Supervisor, Plaintiff, Tarwanna Shaw worked 243 overtime hours, of which she was paid for 0 hours. Therefore, for the remaining 243 overtime hours she worked, she did not receive overtime pay at the rate of time and one half her regular rate of pay $18.39. Plaintiff, Tarwanna Shaw, is then entitled to approximately $4,468.00 for unpaid overtime wages.

102.    For Plaintiff, Antonia Mole, damages begin on January 1, 2012 when he worked as a Maintenance Worker at the Broward Girls Academy facility. Antonia Mole was paid at the regular rate of $9.75 per hour throughout the course of his employment, and was told he would receive overtime compensation for all hours worked in excess of 40 hours each week. From January 1, 2012 and continuing through the end of his employment on July 8, 2013, Plaintiff, routinely worked in excess of .75 hour after the scheduled completion of each shift. Additionally,

Antonia Mole, was required to return to the facility on the weekend to work in excess of 5.75 additional hours.   During the 79 weeks within the statute of limitations he worked as Maintenance, Plaintiff Antonia Mole worked 750.5 overtime hours.   Therefore, for the 750.5 overtime hours he worked, he did not receive overtime pay at the rate of time and one half his regular rate of pay $14.63.  Plaintiff, Antonia Mole, is then entitled to approximately $10,976.06 for unpaid overtime wages.  Facility Administrators do not allow "stay time" to be paid so as to not go over the budgets provided to them by the YSI Corporate Office.

103.    At all times material hereto, Defendants knowingly failed to pay the Plaintiffs and all similarly situated employees for all hours worked and failed to pay all non-exempt employees overtime pay for all overtime hours worked at the rate of time and one-half their hourly rate.

104.    At all times material hereto, Plaintiffs fully performed their obligations as employees of the Defendants.

105.    At all times material hereto Defendants' acts and/or omissions giving rise to this action were not in good faith and at no time did Defendants have reasonable grounds for believing that their acts and/or omissions were not a violation of the FLSA.

106.    Notwithstanding the fact that each Defendants had knowledge regarding their obligation to pay the Plaintiffs an hourly overtime rate, Defendants willfully continue to violate Title 29 U.S.C. § 207 by failing to properly pay overtime wage to Plaintiffs and by not paying them any monies for stay time and meetings that occurred off the clock with the knowledge of the company.

107.    Such continuing conduct by the Defendants evidences a willful decision by the Defendants and their agents to violate the overtime provisions of the FLSA.

108.    Additionally, Plaintiffs, in an effort to receive proper pay would submit missed punch forms.

109.     Defendants had a duty to maintain accurate records regarding hours worked by all employees pursuant to Department of Labor Regulations and pursuant to section 11 of the FLSA.

110.     Defendants failure to maintain accurate records, and intentional destruction of missed punch forms that are relevant to supporting Plaintiffs' claim of unpaid overtime hours, will be a significant impairment in the ability to prove Plaintiff's claims. Accordingly, the Court should make an adverse inference finding against the Defendants that the information they destroyed would have been beneficial to the Plaintiffs' claims.

111.     Plaintiffs have retained the Law Firm of Michael A. Hoffman, Esq., P.A., the Law Firm of Michael A. Pancier, P.A. and the Shavitz Law Group, P.A. to represent them in this litigation and have agreed to pay the firms a reasonable fee for their services.

## STATEMENT OF CLAIMS

### COUNT I

### VIOLATION OF OVERTIME PROVISIONS
### OF THE FAIR LABOR STANDARDS ACT
### 29 U.S.C. §§ 207

112.     Plaintiffs allege and reallege paragraphs 1 through 111 of this Amended Complaint as if fully set forth herein.

113.     Plaintiffs were entitled to be at the rate of 1.5 times their regular rate of pay for all overtime hours worked. Accordingly, the Plaintiffs' overtime rates were as follows:

a.  Emelina Gonzalez - $15.57

b.  Basil Henry - $15.57

c.  Davin Bush - $15.57

d.  Michael Edwards - $17.31

e.  Lashanda Shaw - $15.57

f.  Mikael Florent - $15.57

g.  Tavaras Bradley - $18.57

h.  Pamela Nelson - $15.57

i.  Calvin Collins - $15.57

j.  Anthea Gilbert - $18.39

k.  Stephen Powell - $15.17

l.  Rodney Pewitt - $15.57

m. Anthony Collins - $15.57

n.  Treva Hutchinson - $18.57

o.  Angela Williams-Fertil - $15.57

p.  Sheena Coleman - $15.57

q.  Shaheen Akhtar - $15.57

r.  Iftikhar Akhtar - $15.57

s.  Marcel Douglas - $15.57

t.  Kay Wright - $18.57

u.  Carl Vincent - $15.57

v.  Charles Sullivan - $15.57

w. Latasha Wallace - $15.57

x.  Victor Mala - $15.57

y.  Glenda Jackson - $15.57

z.  Dewayne Williams - $15.57

aa.     Jacinta Haynes - $15.57

bb.     Ramone Davis - $20.25

cc.     Angela Thomas - $15.57

dd.     Nyeisha Rainey

      i.  At Thompson - $15.57

      ii.  At Broward Girls Academy - $15.57

  ee.    Tarwanna Shaw

      i.  Thompson Academy - $15.57

      ii.  At Broward Girls Academy - $18.39

  ff. Antoina Mole - $14.63

114.    Upon information and belief, Plaintiffs are entitled to unpaid overtime wages as follows:

  a.  Emelina Gonzalez - $3,596.67 = 97 weeks * 2.4 hours * $15.57

  b.  Basil Henry - $14,988.15 = 106 weeks * 9.1 hours * $15.57

  c.  Davin Bush - $12,408.98 = 47 weeks * 17 hours * $15.57

  d.  Michael Edwards - $1,748.31 = 67 weeks * 1.5 hours * $17.31

  e.  Lashanda Shaw - $1,285.30 = 89 weeks * 0.9 hours * $15.57

  f.  Mikael Florent - $46,572.98 = 114 weeks * 26.2 hours * $15.57

  g.  Tavaras Bradley - $16,972.98 = 80 weeks * 11.4 hours * $18.57

  h.  Pamela Nelson - $9,106.89 = 106 weeks * 5.5 hours * $15.57

  i.  Calvin Collins - $12,331.44 = 104 weeks * 7.6 hours * $15.57

  j.  Anthea Gilbert - $18,597.07 = 105 weeks * 9.6 hours * $18.39

  k.  Stephen Powell - $16,074.90 = 53 weeks * 20 hours * $15.165

  l.  Rodney Pewitt - $47,266.32 = 106 weeks * 28.6 hours * $15.57

  m.  Anthony Collins - $7,267.30 = 41 weeks * 11.4 hours * $15.57

  n.  Treva Hutchinson - $25,223.07 = 104 weeks * 13 hours * $18.57

  o.  Angela Williams-Fertil - $13,067.12 = 104 weeks * 8.1 hours * $15.57

  p.  Sheena Coleman - $16,280.14 = 50 weeks * 20.9 hours * $15.57

q.  Shaheen Akhtar - $32,233.47 = 105 weeks * 19.5 hours * $15.75

r.  Iftikhar Akhtar - $21,794.06 = 105 weeks * 13.2 hours * $15.75

s.  Marcel Douglas - $12,779.08 = 62 weeks * 13.2 hours * $15.57

t.  Kay Wright - $37,256.06 = 103 weeks * 17.1 hours * $18.57

u.  Carl Vincent - $11,529.90 = 39 weeks * 19 hours * $15.57

v.  Charles Sullivan - $2,563.76 = 48 weeks * 3.4 hours * $15.57

w.  Latasha Wallace - $1,620.37 = 19 weeks * 5.5 hours * $15.57

x.  Victor Mala - $25,116.75 = 99 weeks * 16.3 hours * $15.57

y.  Glenda Jackson - $28,664.37 = 96 weeks * 19.2 hours * $15.57

z.  Dewayne Williams - $6,772.95 = 20 weeks * 21.7 hours * $15.57

aa. Jacinta Haynes - $6,422.62 = 50 weeks * 8.2 hours * $15.57

bb. Ramone Davis – $13,866.19 * 83 weeks * 8.25 hours * $20.25

cc. Angela Thomas - $5,675.27 = 81 weeks x 4.5 hours x $15.57

dd. Nyeisha Rainey

    a.  Thompson - $8,217.07 = 89 weeks * 5.9 hours * $15.57

    b.  Broward Girls Academy - $2,954.41 = 33 weeks * 5.8 hours * $15.57

ee. Tarwanna Shaw

    a.  Thompson Academy - $2,265.43 = 34 weeks * 4.3 hours * $15.57

    b.  Broward Girls Academy - $4,468.77 = 54 weeks * 4.5 hours * $18.39

ff. Antoina Mole - $10,976.06 = 79 weeks * 9.5 hours * $14.63.

115.   Plaintiffs are also owed an equal amount as liquidated damages under the FLSA.

116.     Plaintiffs are entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiffs, Basil Henry, Davin Bush, Charles Sullivan, Emelina Gonzalez, Latasha Wallace, Michael Edwards, Lashanda Shaw, Michael Florent, Tavaras Bradley, Pamela nelson, Calvin Collins, Anthea Gilbert, Stephen Powell, Rodney Pewitt, Anthony Collins, Treva Hutchinson, Angela Williams-Fertil, Carl Vincent, Sheena Coleman, Shaheen Akhtar, Iftikhar Akhtar, Victor Mala, Marcel Douglas, Kay Wright, Glenda Jackson, Dewayne Williams, Jacinta Haynes, Ramone Davis, Angela Thomas, Nyeisha Rainey, Tarwanna Shaw, and Antoina Mole respectfully request that judgment be entered against Defendants YSI, YSI Holding, JFS Development, LLC, and SLATTERY:

(1)     Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that the acts and practices complained of herein are in violation of the FLSA;

(2)     Awarding Plaintiffs unpaid overtime as follows:

    a.   Emelina Gonzalez - $3,596.67 plus an equal amount as liquidated damages totaling **$7,193.34**;

    b.   Basil Henry - $14,988.14 plus an equal amount as liquidated damages totaling **$2,9976.29;**

    c.   Davin Bush - $12,408.97 plus an equal amount as liquidated damages totaling **$24,817.95;**

    d.   Michael Edwards - $1,748.31 plus an equal amount as liquidated damages totaling **$3,496.62;**

    e.   Lashanda Shaw - $1285.30 plus an equal amount as liquidated damages totaling **$2570.60;**

f.  Mikael Florent - $46,572.98 plus an equal amount as liquidated damages totaling **$93,145.96;**

g.  Tavaras Bradley - $16,972.98 plus an equal amount as liquidated damages totaling **$33,945.96;**

h.  Pamela Nelson - $9,106.893 plus an equal amount as liquidated damages totaling **$18,213.78;**

i.  Calvin Collins - $12,331.44 plus an equal amount as liquidated damages totaling **$24,662.88;**

j.  Anthea Gilbert - $18,597.07 plus an equal amount as liquidated damages totaling **$37,194.14;**

k.  Stephen Powell - $16,074.9 plus an equal amount as liquidated damages totaling **$32,149.8;**

l.  Rodney Pewitt - $47,266.3161 plus an equal amount as liquidated damages totaling **$94,532.63;**

m.  Anthony Collins - $7,267.29 plus an equal amount as liquidated damages totaling **$14,534.59;**

n.  Treva Hutchinson - $25,223.07 plus an equal amount as liquidated damages totaling **$50,446.14;**

o.  Angela Williams-Fertil - $13067.12 plus an equal amount as liquidated damages totaling **$26,134.24;**

p.  Sheena Coleman - $16,280.14 plus an equal amount as liquidated damages totaling **$32,560.29;**

q.  Shaheen Akhtar - $32,233.47 plus an equal amount as liquidated damages totaling **$64,466.95;**

r.   Iftikhar Akhtar - $21,794.06 plus an equal amount as liquidated damages totaling **$43,588.12;**

s.   Marcel Douglas - $12,779.07 plus an equal amount as liquidated damages totaling **$25,558.15;**

t.   Kay Wright - $37,256.06 plus an equal amount as liquidated damages totaling **$74,512.12;**

u.   Carl Vincent - $11,529.89 plus an equal amount as liquidated damages totaling **$23,059.79;**

v.   Charles Sullivan - $2,563.75 plus an equal amount as liquidated damages totaling **$5,127.51**;

w.   Latasha Wallace - $1,620.37 plus an equal amount as liquidated damages totaling **$3,240.73;**

x.   Victor Mala - $25,116.74 plus an equal amount as liquidated damages totaling **$50,233.49;**

y.   Glenda Jackson - $28,664.37 plus an equal amount as liquidated damages totaling **$57,328.74;**

z.   Dewayne Williams - $6,772.95 plus an equal amount as liquidated damages totaling **$13,545.90;**

aa. Jacinta Haynes - $6,422.62 plus an equal amount as liquidated damages totaling **$12,845.25;**

bb. Ramone Davis - $13,866.18 plus an equal amount as liquidated damages totaling **$27,732.37;**

cc. Angela Thomas - $2,514.55 plus an equal amount as liquidated damages totaling **$5029.11**;

dd. Nyeisha Rainey

    i.  At Thompson Academy - $8,217.06 plus an equal amount as liquidated damages totaling **$16,434.13;**

    ii.  At Broward Girls Academy - $2,954.40 plus an equal amount as liquidated damages totaling **$5,908.81;**

ee. Tarwanna Shaw

    i.  At Thompson Academy - $2,265.43 plus an equal amount as liquidated damages totaling **$4,530.87;**

    ii.  At Broward Girls Academy - $4,468.77 plus an equal amount as liquidated damages totaling **$8,937.54;**

ff. Antoina Mole - $10,976.06 plus an equal amount as liquidated damages totaling **$21,952.13**;

(3)    Awarding Plaintiffs' attorneys' fees, costs, and expenses of this litigation pursuant to 29 U.S.C. § 216(b);

(4)    Awarding Plaintiffs post judgment interest; and

(5)    Ordering any other and further relief that this Court may deem just and proper.

**COUNT II**

**<u>STATUTORY CLASS ACTION</u>**

117.    Plaintiffs allege and reallege paragraphs 1 through 111 of this Amended Complaint as if fully set forth herein.

118.    Plaintiffs bring this action on their own behalf as well as on behalf of other current and former non-exempt youth counselors and supervisors of Defendants similarly situated for relief pursuant to the FLSA, as amended, 29 U.S.C. § 216(b).

119.   Plaintiffs are similarly situated to other of Defendants' Youth Care Workers/Youth Counselors, Shift Supervisors, Case Managers, Intramural Coordinators, and Maintenance Workers who are not paid for all hours and not being paid overtime hours as a result of Defendants' statewide policy and practice of: 1) forcing them to work off the clock; and 2) shifting hours from one week of pay to another to avoid overtime wages.   Defendants' unlawful practices as set forth herein have affected all current and former Youth Care Workers/Youth Counselors, Shift Supervisors, Case Managers, and Intramural Coordinators ("Members of the Class").

120.   Defendants' failure to pay for all hours worked and overtime as required by the FLSA results from a policy or practice applicable to Plaintiffs and the Members of the Class. Application of this policy does not depend on the personal circumstances of the Plaintiffs or those joining this lawsuit.  Rather, the same policy or practice that resulted in the non-payment of regular and overtime wages applied to all Members of the Class.   Accordingly, the class is properly defined as: "All current and former employees of the Defendant who worked as Youth Counselors/Youth Care Workers, Shift Supervisors, Case Managers, and Intramural Coordinators, and all hourly employees who were not paid for all regular and overtime hours worked."

121.   Defendants knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay for all hours worked and overtime compensation with respect to Plaintiffs and Members of the Class.

122.   Records, if any, concerning the actual number of hours worked by Defendants' employees and former employees and the actual compensation paid to Defendants' employees and former employees and the actual compensation paid to Defendants' employees and former employees similarly situated to Plaintiffs are in the possession, custody, and control of the

Defendants.  These individuals are unable to state at this time the exact amount due and owing each similarly situated employee.  Such information will be obtained by appropriate discovery proceeding to be taken promptly in this case and, if necessary, they will then seek leave of the Court to amend the Complaint to set forth the precise amount due each Plaintiff.

123.    All similarly situated Members of the Class are owed their unpaid overtime pay for each hour they worked and were not paid plus an equal amount as liquidated damages.

124.    Due to the intentional, willful, and unlawful acts of Defendants, all similarly situated Members of the Class have suffered damages and will continue to suffer damages and incur attorneys' fees and costs.

**WHEREFORE**, those similarly situated employees and former employees who have or will opt in to this action demand that judgment be entered against Defendants, YSI, YSI Holding, JFS Development, LLC, and SLATTERY:

(1)    Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that the acts and practices complained of herein are in violation of the overtime provisions of the FLSA;

(2)    Awarding pursuant to Section 16(b) of the FLSA liquidated damages equal in amount to the unpaid compensation due;

(3)    Awarding Plaintiffs reasonable attorneys' fees and costs and expenses of this litigation pursuant to 29 U.S.C. §§ 216 (b);

(4)    Awarding Plaintiffs post judgment interest; and

(5)    Ordering any other and further relief this Court deems to be just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand trial by jury as to all issues so triable as a matter of right.

Date: April 4, 2014

Respectfully submitted,

Michael A. Pancier, Esquire
**LAW OFFICES OF MICHAEL A. PANCIER, P.A.**
9000 Sheridan Street
Suite 93
Pembroke Pines, Florida 33024
(954) 862-2217 (Telephone)
(954) 862-2287 (Facsimile)
mpancier@pancierlaw.com
*Co-Counsel for Plaintiffs*

Michael A. Hoffman, Esq.
**MICHAEL A. HOFFMAN, P.A.**
4000 Hollywood Blvd.
Suite 725-South
Hollywood, FL 33021
(954) 665-5290 (Telephone)
(954) 944-1932 (Facsimile)
michael@mahlawyer.com,
*Co-Counsel for Plaintiffs*

Keith M. Stern, Esq.
Camar R. Jones, Esq.
Gregg I. Shavitz, Esq.
**SHAVITZ LAW GROUP, P.A.**
1515 South Federal Hwy
Suite 404
Boca Raton, FL 33432
(561) 447-8888 (Telephone)
(561) 447-8831 (Facsimile)
kstern@shavitzlaw.com
cjones@shavitzlaw.com
gshavitz@shavitzlaw.com
*Co-Counsel for Plaintiffs*